FILED

SEP 1 4 2005

kT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                Case No. 01-61060-A-11F
                                     DC No. MLF-1
CENTRAL VALLEY AG ENTERPRISES,
INC.


            Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING DEBTOR'S LIMITED OBJECTION TO
PROOF OF CLAIM NO. 53 AND OBJECTION TO CLAIM NO. 54
FILED BY THE INTERNAL REVENUE SERVICE**

A hearing was held July 22, 2005, on an objection to two
claims filed by Central Valley Ag Enterprises, Inc. (the
"Debtor").  The Debtor objected on a limited basis to proof of
claim number 53 ("Claim 53") filed by the Internal Revenue
Service of the United States of America (the "IRS" or the "United
States").  The Debtor also objected to proof of claim number 54
("Claim 54") filed by the IRS.  The objection was on the ground
that the IRS had filed each claim well after the claims bar date
in the case.  The United States filed countermotions to excuse
late filing and to strike.  Following the hearing, the court took
under submission the Debtor's objection to claims and the
countermotion to strike.  The countermotion to excuse late filing
was continued.  This memorandum contains findings of fact and
conclusions of law required by Federal Rule of Bankruptcy

1

1   Procedure 7052 and Federal Rule of Civil Procedure 52.   This is a
2   core proceeding as defined in 28 U.S.C. §157(b)(2)(B).

3                    Background Facts and Procedural History

4        The Debtor filed its chapter 11 case on December 3, 2001.
5   The deadline for a governmental unit to file a proof of claim was
6   June 3, 2002.   The Notice of Chapter 11 Bankruptcy Case, Meeting
7   of Creditors, and Deadlines that contained this deadline was
8   served on the creditors in the case, including the IRS.

9        The IRS has filed three proofs of claim in the case.   Proof
10  of claim number 31 in the amount of $34,729.33 was filed timely
11  on January 22, 2002.   This claim is for year 2001 taxes.   This
12  proof of claim is not at issue here.

13       On October 9, 2002, the IRS filed a proof of claim in the
14  amount of $13,144,262.55 as Claim 53.   This claim was late filed
15  and covers tax years 1993, 1994, 1995, and 2001.   At issue here
16  is the Debtor's limited objection to Claim 53 on the grounds that
17  it is late filed.   The Debtor's previous substantive objection to
18  this proof of claim will be discussed, as it is relevant here,
19  below.

20       On October 8, 2003, almost one year later, the IRS filed
21  Claim 54 in the amount of $14,775,342.09.   Claim 54 covers the
22  same tax years as does Claim 53, but it includes a penalty of
23  $1,080,838.78.   The objection to Claim 54 at issue here is the
24  Debtor's first objection to Claim 54.   Both Claims 53 and 54
25  result from disallowance by the IRS of certain losses claimed by
26  the Debtor's wholly owned subsidiary, Orange Coast Enterprises,
27  Inc. as part of a "lease stripping tax shelter" arrangement.
28

                                    2

1    On June 24, 2003, the Debtor filed a Notice of Preliminary
2  Hearing and Objection to Claim of Internal Revenue Service. The
3  court treated the objection to claim as an adversary proceeding,
4  docketed as adversary proceeding 04-1078, Central Valley Ag
5  Enterprises, Inc. v. Internal Revenue Service.   This objection
6  was on substantive grounds and did not raise the issue of late
7  filing.  In September 2003, the United States moved to withdraw
8  the reference and, following some procedural hiccups, the
9  District Court withdrew the reference "for the limited purpose of
10 making a determination of the legality of the lease-stripping tax
11 shelter."[1]  In January 2005, the United States moved for summary
12 judgment in the District Court action.  The District Court
13 granted that motion, and determined that:

14         "The issue of plaintiff's [the debtor's] tax obligation as
           reflected by the disallowance of the losses from the lease-
15         stripping tax shelter became final by operation of the
           statutory terms of TEFRA [the Tax Equity and Fiscal
16         Responsibility Act of 1982].  As the court interprets the
           terms of TEFRA, this means the matter was 'contested before
17         and adjudicated by a judicial or administrative tribunal of
           competent jurisdiction before the commencement of the case
18         under this title.'  As a consequence, the tax issue falls
           within the limitations set forth in 11 U.S.C. § 505(a)(2)(A)
19         and may not be contested within the context of bankruptcy
           proceedings."
20

21    Having come to that conclusion, the District Court observed
22 that reference to the Bankruptcy Court had been withdrawn for the
23 limited purpose of making a determination of the legality of the
24 lease-stripping tax shelter.  The District Court then concluded
25 that the tax issue in question had become non-reviewable by

26  _____

27       [1]Memorandum Decision of United States District Court in
    Central Valley Ag Enterprises, Inc. v. United States of America,
28  CV F 03-6366 (I don't have a date.)

1  operation of the provisions of TEFRA.    Thus, the court was
2  without jurisdiction to adjudicate that issue.

3          "In short, there is nothing left for this court [the
           District Court] to decide that pertains to the limited issue
4          for which withdrawal of the reference was granted.    The
           withdrawal of the reference will therefore be vacated."
5

6          The Debtor had filed a motion for summary judgment on
7  February 22, 2005, in the District Court, raising for the first
8  time the issue of whether Claims 53 and 54 were time barred.    The
9  District Court concluded that the motion should have been brought
10 in the Bankruptcy Court and dismissed it without prejudice.

11         Following the District Court vacating the withdrawal of the
12 reference, the Debtor filed in this court its limited objection
13 to Claim 53 on the grounds it was time barred and its objection
14 to Claim 54 (never previously brought) on the grounds that claim
15 was time barred as well.    The parties have agreed that the court
16 should confine its ruling to the objection to Claim 53.    Claim 54
17 adds somewhat over $1,000,000 in penalties.    The parties have
18 agreed that there are insufficient assets in the estate to pay
19 even Claim 53.    Therefore, the objection to Claim 54 is moot.

20         The first time the Debtor raised the lack of timeliness was
21 its motion for summary judgment in February 2005 in District
22 Court.    But, from the time the original objection to Claim 53 was
23 filed, the parties have extensively litigated the substantive
24 arguments raised in the objection to Claim 53, both in the
25 Bankruptcy Court and in the District Court.

26         The United States has conducted extensive discovery on the
27 merits of the issues.    It has served formal and informal document
28 production requests on the Debtor and numerous subpoenas and

                                    4

informal letter requests upon the Debtor's former employees, Comdisco, Inc., the promoter of the lease-strip tax shelter in question, the accounting firm, the banks, and the four law firms and their former employees who provided services either to Comdisco or to the Debtor in connection with the tax shelter. The United States generated an electronic data base of over 70,000 pages of documents, and those documents have been reviewed and, where necessary, analyzed by the United States' trial team and expert witnesses.

As of June 2005, the parties had taken 34 fact depositions, most of which were videotaped, in Illinois, Massachusetts, Arizona, California, Tennessee, and Georgia.  The United States took nine depositions about the penalties in Arizona, Georgia, Illinois, California, and Massachusetts.

The parties have retained nine expert witnesses, five by the debtor and four by the United States.  Opening and rebuttal expert witness reports have been exchanged.  As of June 2005, the United States had incurred over $1,114,000 in fees and expenses for expert witnesses.  As of August 22, 2005, debtor's special tax counsel had requested allowance of $1,335,316.25 in attorney's fees and over $100,000 in expenses.  The Debtor had also incurred fees for expert witnesses, in an amount of over $290,000.

Prior to the withdrawal of the reference, the United States sought a stay of discovery pending resolution of its summary judgment motion in this court.  The debtor opposed the request, and the court denied the motion.  Seven months later, the District Court granted the United States' motion for summary

5

1  judgment, resolving the Debtor's substantive objection in favor
2  of the claimant.

3      The chapter 11 case was filed in December 2001.  This has at
4  all times been a liquidating chapter 11.  When Claim 53 was
5  filed, the Debtor had objected to numerous claims, and those
6  objections were pending.  The Debtor was (and still is) engaged
7  in selling its real property to provide funds for its liquidating
8  chapter 11 plan.  However, that plan was withdrawn, pending
9  resolution of the IRS claims.  Thus, the entire chapter 11 case
10 has been on hold while the Debtor's objection to Claim 53 has
11 been litigated.  But not until February 2005, in the District
12 Court, did the Debtor ever object to Claims 53 or 54 on the
13 grounds of lateness.

14                     Applicable Law

15 The Bankruptcy Code and Rules

16      Bankruptcy Code § 502(a) says that a claim, proof of which
17 is filed under § 501, is deemed allowed unless a party in
18 interest objects.  Section 501(a) says that a creditor may file a
19 proof of claim.  The bar dates for filing proofs of claim are, in
20 the first instance, set forth in the Federal Rules of Bankruptcy
21 Procedure.  Rule 3003(c)(3) states that in a chapter 11 case, the
22 court "shall fix and for cause shown may extend the time within
23 which proofs of claim . . . may be filed."

24      Here, the court fixed the time within which governmental
25 units might file proofs of claim.  Claim 53 and Claim 54 were
26 filed well after that date.  The Debtor's central argument is
27 that because Claim 53 and Claim 54 (essentially an amendment to
28 Claim 53) were filed after the bar date, the court should

                        6

1  disallow them.   The Debtor asserts that excusable neglect does
2  not permit the late filed claims, observing that the government
3  never asked the court for permission to file a late claim.

4     Federal Rule of Bankruptcy Procedure 9006(b)(1) provides
5  that, with exceptions not relevant here:

6     "When an act is required or allowed to be done at or within
       a specified period by these rules or by a notice given
7      thereunder or by order of court, the court for cause shown
       may at any time in its discretion (1) with or without motion
8      or notice order the period enlarged if the request therefor
       is made before the expiration of the period originally
9      prescribed or as extended by a previous order or (2) on
       motion made after the expiration of the specified period
10     permit the act to be done where the failure to act was the
       result of excusable neglect."
11

12    The United States did not seek authority to file a late
13 claim until the Debtor objected to the claim as late.   The court
14 continued the hearing on the motion of the United States to allow
15 late filed claim, pending a decision on the objection to claim on
16 the grounds of lateness.

17    The United States argues that the Debtor has waived its
18 ability to assert that Claims 53 and 54 are time barred.   The
19 United States also asserts that the failure to file Claims 53 and
20 54 timely resulted from excusable neglect.

21 Kontrick v. Ryan

22    The key case here is <u>Kontrick v. Ryan</u>, 540 U.S. 443, 124 S.
23 Ct. 906, 157 L. Ed. 2d 867 (2004).   In that case, the Supreme
24 Court addressed whether the time prescriptions of Federal Rule of
25 Bankruptcy Procedure 4004 could be raised at any time in the
26 proceeding (which the parties characterized as "jurisdictional")
27 or must be timely invoked.

28    The rule in question in <u>Kontrick v. Ryan</u> was Federal Rule of

7

1  Bankruptcy Procedure 4004.  That rule provides that a complaint
2  objecting to a chapter 7 debtor's discharge shall be filed no
3  later than 60 days after the first date set for the meeting of
4  creditors.  Rule 4004(b) provides that this deadline may be
5  extended for cause if the motion seeking an extension is filed
6  before the time has expired.  Rule 9006(b)(3) allows enlargement
7  of the time under Rule 4004(a) only to the extent and under the
8  conditions stated in that rule.  Thus, if a creditor wishing to
9  object to a debtor's discharge does not file its complaint within
10 60 days after the date first set for the meeting of creditors, or
11 seek an extension of that deadline within the 60 days, Rule 4004
12 will bar the complaint.

13    In <u>Kontrick v. Ryan</u>, the creditor filed an initial complaint
14 under § 727 timely.  He then amended the complaint to
15 particularize certain facts for the first time.  The amended
16 complaint was filed after the Rule 4004(a) bar date.  The debtor
17 answered the complaint but did not raise the untimeliness of the
18 new claim.  Eventually, the bankruptcy court denied Kontrick's
19 discharge.  Kontrick moved for reconsideration, asserting that
20 the new claim (the one on which the court had granted summary
21 judgment) was untimely under Rule 4004.  The bankruptcy court
22 denied that motion, and the district court affirmed, as did the
23 Seventh Circuit Court of Appeals.  Both courts relied on
24 decisions of other circuits, holding that the timeliness
25 provisions in Rule 4004 were not "jurisdictional."  The Supreme
26 Court in its turn affirmed.  The court observed that the
27 Bankruptcy Rules do not create or withdraw federal jurisdiction.
28 <u>Id.</u> at 452.  The Rules merely prescribe the method by which the

jurisdiction granted the courts by Congress is to be exercised. <u>Id.</u> at 454.

The debtor in <u>Kontrick</u> argued that Rules 4004 and 9006(b)(3), although not properly labeled "jurisdictional" in the sense of describing a court's subject matter jurisdiction, nonetheless had the same import as provisions governing subject matter jurisdiction. That is, according to the debtor in <u>Kontrick</u>, just as a challenge to subject matter jurisdiction may be raised at any stage of the proceedings, so also, an objection to timeliness should be allowed to be raised at any time in the proceedings. The Supreme Court disagreed. It stated:

> "The equation Kontrick advances overlooks a critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule. Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits to long to raise the point."

<u>Id.</u> at 456.

According to the Supreme Court, Federal Rules of Bankruptcy Procedure 4004(a) and (b) and 9006 (b)(3) serve three primary purposes.

> "First, they inform the pleader, <i>i.e.</i> the objecting creditor, of the time he has to file a complaint. Second, they instruct the court on the limits of its discretion to grant motions for complaint-filing-time enlargements. Third, they afford the debtor an affirmative defense to a complaint filed outside the Rules 4004(a) and (b) limits."

<u>Id.</u> at 456.

Like Rules 4004 and 9006, Rule 3003(c)(3) is a claim-processing rule. Just as no statute prescribed a time limit in <u>Kontrick</u> for the filing of a complaint to deny discharge, so no

statute prescribes a time limit to file a proof of claim.   In
Kontrick, the Court phrased the "sole question" as whether the
creditor forfeited his right to assert the untimeliness of the
amended complaint by failing to raise the issue until after the
complaint was adjudicated on its merits.  Here, the sole question
is whether the Debtor forfeited its right to assert the
untimeliness of the filing of Claims 53 and 54 by failing to
raise the issue until after the objections had been adjudicated
on their merits.  The objections have been adjudicated on their
merits because the District Court granted the motion of the
United States to dismiss for lack of subject matter
jurisdiction.[2]

     In Kontrick v. Ryan, the Supreme Court observed that
ordinarily under the Bankruptcy Rules as under the Civil Rules,
an affirmative defense is lost if not included in the answer or
the amended answer.  Even if a defense could be equated to a
failure to state a claim upon which relief could be granted, the
issue could be raised at the latest at the trial on the merits.
Only lack of subject-matter jurisdiction is preserved post trial.
Id. at 459.

     A decision from the Bankruptcy Court for the Eastern
District of California states that Kontrick v. Ryan "teaches that
one forfeits the right to rely on a deadline prescribed by an
apparently inflexible bankruptcy 'claims processing rule' if one
does not timely invoke the rule."   In re Montanaro, 307 B.R. 194,

---

     [2]The Debtor has appeared that dismissal to the Ninth Circuit
Court of Appeals.

1  197 (Bankr. E.D. Cal. 2004).

2         A time bar is an affirmative defense which generally must be
3  raised in an answer or responsive pleading.  <u>See</u>, Federal Rule of
4  Civil Procedure 8(c), made applicable to adversary proceedings in
5  Bankruptcy Courts by Federal Rule of Bankruptcy Procedure
6  7008(a).

7         Here, an interesting procedural question arises.  This
8  objection to claim was filed as a contested matter, and thus Rule
9  9014 is applicable.  Rule 9014(c) of the Federal Rules of
10  Bankruptcy Procedure describes which of the Part VII Rules apply.
11  Rule 7008, which incorporates Federal Rule of Civil Procedure 8,
12  is not made applicable to contested matters by Rule 9014.  When
13  the original objection to Claim 53 was filed, the parties and the
14  court agreed to treat the matter as an adversary proceeding, and
15  it was, in fact, docketed as such.  Upon the withdrawal of the
16  reference by the District Court, the District Court treated the
17  matter as civil action.  In the context of that civil action, the
18  Debtor filed a motion for summary judgment in February 2005,
19  asserting the lack of timeliness of the proofs of claim for the
20  first time.  Therefore, to assert now that Rule 8 is not
21  applicable would be of no avail.  Similarly, Federal Rule of
22  Bankruptcy Procedure 7012 makes Federal Rule of Civil Procedure
23  12 applicable in adversary proceedings (although Rule 9014 does
24  not make it applicable to contested matters).  However, even if
25  neither Rule 8 nor Rule 12 applies on its terms to this contested
26  matter, the teaching of <u>Kontrick v. Ryan</u> about the application of
27  the doctrine of waiver is still pertinent.

28

11

1  The Doctrine of Waiver

2      The court must, then, decide whether the Debtor has waived
3  the objection that the claim was not timely filed by failing to
4  raise that objection in a timely manner.  The purpose of the
5  equitable doctrine of waiver is to provide an incentive for
6  parties to raise obvious defenses early in the proceeding, before
7  a great amount of time and effort has been expended, so as to
8  minimize any resulting prejudice.   In re Santos, 112 B.R. 1001
9  (9th Cir. BAP 1990).

10      In that case, the Bankruptcy Appellate Panel considered
11  whether and under what circumstances waiver could be applied to
12  preclude assertion of the untimeliness of a complaint under
13  Federal Rules of Bankruptcy Procedure 4007(c) and 4004.  The BAP
14  held, initially, that the deadlines set forth in Rules 4007(c)
15  and 4004(a) were not jurisdictional time limits.  The BAP thus
16  was prescient as Kontrick decided that issue conclusively some 14
17  years later.

18      The BAP considered a number of factors in determining
19  whether a failure to timely raise a limitations defense should
20  constitute a waiver.  These factors include the following.

21      "1) The obviousness of the defense's availability, 2) the
           stage of the proceeding at which the defense is raised, 3)
22         the time which has elapsed between the filing of the answer
           and the raising of the defense, 4) the amount of time and
23         effort expended by the plaintiff in the case at the time the
           defense was raised, and 5) the prejudice resulting to the
24         plaintiff which would result from allowing the defense to be
           asserted."
25
    Id. at 1008.
26

27      The first factor is the obviousness of the defense's
28  availability.  If the defense is obvious, it is more difficult to

12

1   explain why it was not timely raised.   In this case, the Debtor's
2   attorney, Hilton Ryder, acknowledged in a declaration that he was
3   aware at the time the initial objection was filed that Claim 53
4   was filed late.   However, he mistakenly concluded that a tardily
5   filed claim in chapter 11 would not be disallowed. Thus, the
6   Debtor, through its counsel, was aware of the defense at the time
7   the original objection to claim was filed, yet chose not to raise
8   it.

9       The Debtor asserts that the obviousness of the defense
10  should act in its favor because the defense was so obvious that
11  the United States knew about the defense when the claim was late
12  filed.   This argument lacks merit.   Under <u>Kontrick v. Ryan</u>, the
13  lateness of the proof of claim is an affirmative defense, which
14  the Debtor is responsible to raise.

15      The second factor is the stage of the proceedings at which
16  the defense is raised.   Here, as set forth earlier, the defense
17  was not raised until the objection to claim had been pending for
18  some time and not until the parties had spent over two million
19  dollars in pretrial work and discovery.

20      The Debtor asserts that Local Rule of Bankruptcy Procedure
21  3007-1(b) and Federal Rule of Bankruptcy Procedure 3007 do not
22  require an itemization of every fact or defense that the debtor
23  might have an objection.   Nonetheless, to have an obvious
24  objection to a proof of claim, an obvious defense to the claim of
25  the IRS and not to raise it until after years of litigation had
26  passed, is certainly not contemplated by either Rule 3007 or the
27  applicable Local Rule.

28      According to the Debtor, it is not required to spell out

13

1  every theory of objection.   <u>Southland Corp v. Kilgore & Kilgore</u>
2  <u>(In re Southland Corp.)</u>, 19 F.3d 1084, 1087 (5th Cir. 1994).
3  That case is distinguishable because under its facts, the debtor
4  provided actual notice to the creditor on several separate
5  occasions about the disputed issue.  Here, there is no evidence
6  to suggest that the Debtor ever provided actual notice to the
7  United States that it intended to object to Claim 53 on the
8  grounds that it had been late filed.  As the United States has
9  observed, the purpose of the doctrine of waiver is to preclude
10  defenses that otherwise have no time limit.

11      The third factor is the time that has elapsed between the
12  filing of the answer and the raising of the defense.  The United
13  States filed its proof of claim on October 9, 2002.  The Debtor's
14  original objection was filed in April 2003.  The objection to
15  timeliness was not raised until brought in District Court in
16  February 2005.  Thus, the Debtor waited almost two years to raise
17  this issue.  During that time, the parties expended vast sums of
18  money and time in litigating the substantive issue.  Further, the
19  court, both the Bankruptcy Court and the District Court have
20  expended resources on the substantive issue.

21      The fourth factor is the amount of time and effort expended
22  by the plaintiff (here the IRS) at the time the defense was
23  raised.  Here, the government had spent over $1,000,000 in expert
24  witness fees and expenses, and conducted extensive discovery.

25      The fifth factor is the prejudice resulting to the plaintiff
26  which would result from allowing the defense to be asserted.
27  According to the United States, it would be severely prejudiced
28  because of the time and expense it has incurred.  The court

14

1  agrees.   The United States has spent over $1,000,000 in outside
2  expert fees.   Resources of time and personnel have been spent by
3  counsel for the United States.   Both the District Court and the
4  Bankruptcy Court have spent a great deal of time on issues raised
5  by the substantive objection, and the Debtor itself has incurred
6  large attorney and expert fees.   If this case does not
7  demonstrate the sort of prejudice that should result in waiver,
8  the court is hard pressed to know what would.

9       The Debtor asserts that the United States is at fault
10  because it did not file a motion under Federal Rule of Bankruptcy
11  Procedure 9006(b) to excuse the late filing.   The Debtor says
12  that if the United States had filed such a motion, the lateness
13  of the claim would have been put before the court for decision
14  immediately.   In support of this argument, the Debtor cites a
15  Seventh Circuit case. In re K-Mart Corp., 381 F.3d 709 (7th Cir.
16  2004).

17       In the K-Mart case, claimant Simmons filed a proof of claim
18  one day after the bar date.   On September 23, 2002, Simmons'
19  attorney received a notice from K-Mart telling her that her claim
20  was time barred.   Simmons' attorney then waited until October 21,
21  2002, to move under Rule 9006(b)(1) of the Federal Rules of
22  Bankruptcy Procedure for the proof of claim to be deemed timely
23  filed.   All told, 81 days elapsed between the time of the claims
24  bar date and the time she filed the Rule 9006(b) motion.   In
25  addition to considering other factors, the Seventh Circuit Court
26  of Appeals held that the 81 day period was simply too long.   Id.
27  at 714.

28       But the facts in the K-Mart case were very different from

15

1  the facts here.   The Court of Appeals reviewed the decision of
2  the Bankruptcy Court by the following standard:

3       "The Bankruptcy Court's refusal to deem Simmons' claim
     timely filed will be overturned only in extreme cases, when
4       the Bankruptcy Court has abused its discretion."

5  <u>Id.</u> at 712.   Under the circumstances of the case, including the
6  many creditors similarly situated to Simmons, the Court of
7  Appeals concluded that the Bankruptcy Court had not abused its
8  discretion.   That is far from expressing a general rule that an
9  81 day period between a bar date for filing a proof of claim and
10 filing a motion under Rule 9006(b) is too long.   Further, the
11 language of Bankruptcy Code § 502(a) does not support the
12 Debtor's argument that the United States was required to file a
13 motion under Rule 9006(b) to excuse the late filing.   Section
14 502(a) states that a claim, proof of which is filed under § 501,
15 is deemed allowed unless a party in interest objects.   The burden
16 was on the Debtor to come forward with an objection to the proof
17 of claim.   By waiting so long to raise the issue of timeliness,
18 the Debtor has waived that argument.

19 Late Filing Excusable

20      Although the motion to excuse late filing filed by the
21 United States is a separate matter (a countermotion) and has been
22 continued to a new calendar date and thus is not under submission
23 now, nonetheless the Debtor has raised the question of whether
24 the late filing is excusable under Federal Rule of Bankruptcy
25 Procedure 9006 as part of its objection to the late filed claim.
26 Thus, the court will address that issue here.

27      In <u>Pioneer Investment Services Co. v. Brunswick Associates</u>
28 <u>Ltd. Partnership</u>, the Supreme Court described the standards for

16

1   excusable neglect under Federal Rule of Bankruptcy Procedure

2   9006(b).   507 U. S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74

3   (1993).

> "Because Congress has provided no other guideposts for
> determining what sorts of neglect will be considered
> 'excusable,' we conclude that the determination is bottom an
> equitable one, taking account of all relevant circumstances
> surrounding the party's omission.   These include, as the
> Court of Appeals found, the danger of prejudice to the
> debtor, the length of the delay and its potential impact on
> judicial proceedings, the reason for the delay, including
> whether it was within the reasonable control of the movant,
> and whether the movant acted in good faith."

10  Id. at 394.

11      The court agrees that there is a lack of prejudice to the

12  Debtor.   The Debtor, through its wholly owned subsidiary, Orange

13  Coast Enterprises, Inc., controlled 98% of Astropar. The Debtor

14  should have been aware of the impending tax debt because the

15  Debtor's wholly owned subsidiary, Orange Coast Enterprises, Inc.,

16  was the Tax Matters Partner of Astropar.   The IRS was not

17  auditing the Debtor; it was auditing Astropar.   Under TEFRA, the

18  audit takes place at the partnership level.   Astropar had a

19  different tax identification number from the Debtor.   However,

20  the Debtor did not list Astropar or the pending audit of that

21  entity on its schedules.   Thus, it is excusable that the IRS

22  originally failed to identify the Debtor in time to file a timely

23  proof of claim.   The declaration of Oscar Gipe, a Revenue Officer

24  with the IRS, is to the effect that in his regular practice of

25  preparing proofs of claim, he does not check for TEFRA related

26  entity audits, unless the Debtor reported the TEFRA related audit

27  on its petition or supporting schedules.   The Debtor here did not

28  do so.   When Mr. Gipe checked his records before the plan

17

1  confirmation hearing in October 2002, the IRS records showed that
2  substantial assessments of additional tax had been made on July
3  29, 2002.  Mr. Gipe then immediately prepared an amended proof of
4  claim (Claim 53), reflecting the additional assessments and
5  caused a copy to be faxed to the Debtor's attorney.  According to
6  Mr. Gipe, Mr. Ryder was not surprised by the new assessments and
7  indicated that his client was aware of the pending audit.  See,
8  Declaration of Oscar Gipe filed June 29, 2005, in opposition to
9  the objection to late filed claim.  Therefore, the court can
10 conclude that the delay was reasonable.  The IRS was not
11 negligent.  The IRS acted in good faith.

12     The delay has not prejudiced the Debtor.  This is a
13 liquidating chapter 11 case.  Creditors are to be paid in order
14 of priority.  No reorganization is impeded by the late claim.
15 Rather, the late claim, if allowed, simply changes the amounts to
16 be distributed in this liquidating case.  As the Debtor should
17 have been aware of the pending tax claim from the beginning, the
18 court cannot find prejudice to the Debtor.  No plan has been
19 confirmed in the case.  Also indicative of lack of prejudice to
20 the Debtor is the fact that the Debtor waited so long to raise
21 the lateness defense.

22     For all those reasons, the court finds that the lateness of
23 filing Claim 53 was excusable neglect.

24     For the foregoing reasons, the objection to Claim 53 will be
25 overruled.  The objection to Claim 54 is moot.  Counsel for the
26 / / /
27 / / /
28 / / /

18

1  United States may present a proposed form of order.

2  DATED: September 14, 2005.

3

4  WHITNEY RIMEL, Judge
   United States Bankruptcy Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                  PROOF OF SERVICE BY MAIL

2   STATE OF CALIFORNIA        )
                               )   ss.
3   COUNTY OF FRESNO           )

4        I am a citizen of the United States and a resident of the
    county aforesaid; I am over the age of eighteen years and not a
5   party to the within above-entitled action; my business address is
    2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721.
6   On September 14, 2005, I served the within document on the
    interested parties in said action by placing a true copy thereof
7   enclosed in a sealed envelope with postage thereon fully prepaid,
    in the United States mail at Fresno, California, addressed as
8   follows:

9   Hilton A. Ryder, Esq.
    McCormick, Barstow, Sheppard,
10        Wayte & Carruth
    P. O. Box 28912
11  Fresno, California 93729-8912

12  Myron L. Frans, Esq.
    Walter A. Pickhardt, Esq.
13  Faegre & Benson
    2200 Wells Fargo Center
14  90 South Seventh Street
    Minneapolis, Minnesota 55402-3901
15
    G. Patrick Jennings, Esq.
16  Dennis M. Donohue, Esq.
    Trial Attorneys, Tax Division
17  U. S. Department of Justice
    P. O. Box 683
18  Ben Franklin Station
    Washington, D.C. 20044-0683
19
    Robert M. Ratchford, Esq.
20  Special Attorney to the Dept. of Justice
    Internal Revenue Service
21  Office of Chief Counsel, LMSB
    200 West Adams Street, Suite 2400
22  Chicago, Illinois 60606

23  Office of the United States Trustee
    1110 U. S. Courthouse
24  1130 O Street
    Fresno, California 93721
25
         I certify (or declare), under penalty of perjury, that the
26  foregoing is true and correct.  Executed on September 14, 2005,
    at Fresno, California.
27

28                              _____
                                Kathy Torres, DPS

                              20